Deaderick, J.,
delivered the opinion of the Court.
The complainant filed his bill in the Chancery Court at Winchester, on the 9th of August, 1860, against G. *554 W. D. Harris, guardian, &c.; F. T. Estill, administrator of W. E. Venable, deceased, and Benj. Dechard.
The complainant, with David and P. S. Dechard, about the 5th of July, 1853, became the surety of defendant, Benj. Dechard, to defendant, G. W. D. Harris, guardian, &c., upon several notes, amounting in the aggregate to about the sum of- eighteen thousand dollars. At the same time, Benj. Dechard, with the assent of his sureties given in writing upon the deed, executed a deed of trust for a valuable tract of land situate in Franklin county, to secure said notes. The land was conveyed to "W. E. Venable, trustee; and the deed provided that, if the several notes therein secured should be paid by the 10th of April, 1855, then the conveyance should be void; but, if the notes should not be paid, then the trustee was empowered to sell the lands conveyed, and with the proceeds pay the expenses of executing the trust: “he shall pay and satisfy said notes, with interest thereon, computed to the 10th of April in every year; and the balance of the proceeds of said sale of lands, if any, shall be paid to said Dechard.”
The trustee was empowered by said trust deed to sell the lands publicly or privately. The trust deed contains the further stipulation that, “every security to said notes assents to the provisions of this deed, and agrees that the provisions of this deed shall not operate ki any way to release him from any of the obligations or liabilities of said suretyship.”
The trustee also signed the deed, and undertook the exercise of the powers therein conferred upon him. The land was sold for more than enough to pay the debts *555 due to Harris, and the greater portion of said debt was paid to him from time to time.
As appears from the answer of Harris, Estill, the administrator of Yenable, had a settlement about the 1st of June, 1858, at which time Estill paid him one of the land notes for $3,253.61, leaving a balance then due to Harris upon the note of the Dechards and complainant, of $929.50; and this is the sum, with its interest, which Harris claims is still due to him, and for which he instituted suit in the Circuit Court of Franklin county, against complainant. And the bill in this case is filed to enjoin that suit at law, and alleges that “the Harris debt was fully paid by the receipt of the land notes;” and further alleges that Venable, the trustee, “seeing and understanding that the Harris debt was all paid to him,” paid and applied about fifteen hundred dollars of the land notes upon a bank debt due from Dechard, the maker of the trust deed, which Venable the trustee, had in his hands, as an attorney, for collection.
The bill further charges that, even if the Harris debt was not paid, the payment of the bank debt in his hands for collection, as an attorney, was a misapplication of the trust fund, and made him responsible, and released complainant, and that Harris is now prosecuting said suit at law against complainant to recover a sum of money due from said Venable’s estate.
The bill further alleges that, after Dechard had left the -State, Harris and Venable’s' administrator made a settlement, and it appeared that there was upwards of $900 still due to Harris. The complainant, in his bill, *556 prays to be discharged from liability, and that Estill, administrator of Venable, be required to pay the debt to Harris.
Harris, Estill administrator of Venable, and Hechard, the. principal in the notes and maker of the trust deed, answer.
Harris, in his answer, insists upon the liability of complainant for the balance due him, of $929.50, 1st of June, 1858; and that he is not discharged from said liability by reason of the failure of Venable to pay the full amount of the debt due him; and that Estill, administrator, promised not to plead the statute of limitations if sued by him.
Benjamin Dechard, the principal in the notes secured, states that the trustee had in his hands a debt due to the Planter’s Bank of Tennessee, and that he and the trustee made a calculation of the debt due to Harris, and made out about $1,500 in the hands of the trustee, in land notes, over and above what would be required to satisfy the Harris notes; and the trustee claiming no commissions,- he directed him to apply the $1,500 to the payment of the bank debt -and other notes in his hands for collection, which was done.
Despondent, Estill, states in his answer that he does not know how the notes for the land were disposed of, except the notes which came to his hands as administrator, which were received by said Harris as a payment, as stated in his answer. He says he can not admit or deny that his intestate took the notes in full payment of Harris’ debt; but intestate told him that he applied a portion of the notes, (and about the amount *557 stated,) as alleged in Lechar d’s answer; and farther states that he would not plead any statute of limitations if sued by Harris, unless it was his duty, of he was compelled to do so. -
On the 5th of October, 1866, Harris filed a cross bill, making the purchasers of the land from Venable, trustee, parties, and seeking to hold them liable, upon the ground that they were bound to see that the purchase money of the lands conveyed in the trust was applied to the ex-tinguishment of the debts therein secured; insisting, however, that the liability of the purchasers of the land did not release Loughmiller from his obligation to pay the debts.
This cross bill was demurred 'to, and the demurrer was sustained, and the cross bill dismissed; and upon the original bill the Chancellor rendered a decree in favor of Harris, against complainant, Loughmiller, for $929.50, and interest thereon, from 1st of June, 1858. Harris, the complainant in the cross bill, appeals from the decree dismissing his cross bill, and complainant, Lough-miller, also appeals from the decree against him.
The argument here has been chiefly directed to the question presented by the cross bill; and it is insisted that the purchasers of the land fom the trustee were bound to see to the application of the purchase money to the debts secured in the trust deed. Several authorities are produced, sustaining this view; and the case of Elliott v. Merryman, Lead. Ca. Eq., p. 58, is specially relied on to support this proposition. It is unquestionably true that such is the current of English authorities; but a different rule has prevailed in most of the Ameri *558 can States. And whether the property sold be real or personal, and whether it be sold for the payment of debts generally, or for certain specified debts,' or for the payment of legacies, or for re-investment, “it may be considered as the prevailing doctrine in the American courts,- that a purchaser from a trustee is not bound to see to the application of the purchase money; and he will not be held liable for its misapplication,' unless the sale is a breach of trust on the part of the trustee, and the purchaser has notice or knowledge, either from the face of the transaction itself, or aliunde, of the trustee’s •violation of duty. Hare ■& Wallace’s Notes, &e., 74.
The distinction which existed in the doctrine upon this subject between this country and England, has been abolished by the Act of 7 and 8 Vic., c. 76, which enacts that the bona fide payment to and receipt of any person, to whom any money shall be payable, upon any express or implied trust, or for any limited purpose, shall effectually discharge the person paying the same from seeing to the application, or being answerable for the misapplication thereof, unless the contrary shall be expressly declared in the instrument creating the trust.
Although in 2 Story, § 1132, the learned author, following the English authorities, says that, “where the real estate is sold for the payment of specified debts or legacies, the purchaser is bound to see that the money is actually applied in discharge-of them,” yet he states in § 1135, having in previous sections discussed the distinctions adopted by courts of equity upon the subject, that they “lead strongly to the conclusion to which not only eminent jurists, but also eminent judges, have ar *559 rived, that it would have been far better to have held, in all cases, that the party having the right to sell had also the right to receive the purchase money, without any further responsibility on the part of the purchaser, as to its application.”
Although there has been no direct adjudication by this Court upon the question as presented’ in this case, yet in the case of Williams v. Otey, 8 Hum., 568, where the property conveyed in trust was personalty, and the debts secured not specifically named, it was held that a bona fide purchaser will be protected, though the trust be abused, and that the purchaser is not bound to see to the proper application of the purchase money. Complainant, LoughmiUer, was a party to the trust deed, and assented to its provisions. That deed empowered the trustee to sell the land, and pay the money to Harris, to extinguish his debt, and to pay the residue to Dechard. The execution of this trust and duty was imposed on the trustee; and LoughmiUer was not released, simply because a sufficient fund came to trustee’s hand to pay the debt, unless his failure to pay was occasioned by some wrongful act of Harris. There being no evidence of any fault of Harris, and the debt remaining unpaid, LoughmiUer is still liable for it.
The Chancellor’s decree upon the original bill will, therefore, be affirmed to this extent; but complainant in that bill, upon the facts disclosed in this record, is entitled to a decree over against the administrator of Vena-ble, for the amount of his liability to Harris; it appearing that Venable, in direct violation of the pro *560 visions of the trust deed, paid debts in his own hands for collection, to the amount of $1,500, out of the trust fund, leaving nothing to pay the balance of the debt to Harris, which was to be first paid.
Estill does not rely, in his answer to complainant’s bill, upon the statute of limitations of twp years for the protection of his intestate’s estate, which it was, perhaps, his duty to have done. With this modification, the Chancellor’s decree will be affirmed, and the cross bill will be dismissed, at the cost of the complainant therein.[1]

 The decree for costs was in favor of the defendants in the original bill, against Loughmiller and his sureties for his appeal, for the costs of the original bill, with a decree in his favor against Estill, administrator of Venable, for the same costs, and decree as above as to the cross bill.